UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTEO FLORES,

       Plaintiff,                     Hon. Paul L. Maloney

v.                                    Case No. 1:07-CV-74

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for payment of benefits**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years of age at the time of the ALJ's decision. (Tr. 20, 65). He completed the tenth grade and worked previously as a cashier and fast food worker. (Tr. 89, 107, 344).

Plaintiff applied for benefits on June 18, 2003, alleging that he had been disabled since June 10, 2003, due to hepatitis, high blood pressure, and "mental nervousness." (Tr. 65-67, 79, 88, 316-17). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 21-64, 318-31). On November 29, 2005, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, James Engelkes. (Tr. 339-56). In a written decision dated May 26, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 14-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2005. (Tr. 16); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**RELEVANT MEDICAL HISTORY**

Plaintiff was diagnosed with hepatitis C in 1986. (Tr. 191). A September 18, 2001 liver biopsy showed "chronic hepatitis with moderate activity." (Tr. 134). Treatment notes from 2002 and 2003, however, reveal that Plaintiff was unable to obtain treatment for his hepatitis. (Tr. 133, 136, 138, 191). Specifically, Plaintiff's care providers reported that before receiving treatment for hepatitis C Plaintiff needed "psychiatric clearance" because the treatment for hepatitis C "can cause severe depression." (Tr. 133, 136, 138, 191). As Plaintiff's care providers further observed, however, Plaintiff lacked medical insurance to pay for either the psychiatric consultation or the hepatitis treatments. (Tr. 133, 136, 138, 191).

On April 16, 2003, Plaintiff's treating physician, Dr. Peter Cooke, completed a Medical Examination Report regarding Plaintiff's ability to perform work activities. (Tr. 197-98). The doctor reported that Plaintiff suffered from Hepatitis C, cirrhosis, high blood pressure, chronic back pain, and paranoid schizophrenia. (Tr. 197). Dr. Cooke reported that during an 8-hour workday, Plaintiff could stand and walk for one hour each and could also sit for four hours. (Tr. 198). As for Plaintiff's ability to lift and carry, the doctor reported that Plaintiff could occasionally lift ten pounds, but could never lift more than ten pounds. (Tr. 198). Dr. Cooke also reported that Plaintiff was "very limited mentally" and that he experienced specific limitations in the following areas: following directions, comprehension, and memory. (Tr. 198).

On July 1, 2003, Dr. Cooke authored a memorandum regarding Plaintiff's condition. (Tr. 194). The doctor reported that Plaintiff suffered from "chronic Hepatitis C and chronic back pain." (Tr. 194). Dr. Cooke further reported that "[m]ost significantly, [Plaintiff] has a psychiatric disorder which would make it very difficult for him to find a position of employment." (Tr. 194).

On September 4, 2003, Plaintiff participated in a consultive examination conducted by Dr. Thomas Keaveney. (Tr. 172-76). Plaintiff did not report any physical impairments or abnormalities. (Tr. 172-73). Plaintiff was able to walk without difficulty. (Tr. 173). An abdominal examination revealed no evidence of abnormality. (Tr. 173). An examination of Plaintiff's extremities was similarly unremarkable. (Tr. 173). The doctor observed no evidence of muscular or neurologic abnormality nor any evidence of inflammation or tenderness in any of Plaintiff's joints. (Tr. 173-74). Dr. Keaveney recognized Plaintiff's history of hepatitis C, but discerned no evidence of "chronic liver dysfunction." (Tr. 173). The doctor further observed, however, that "over time without treatment clearly he is at risk for development of significant liver disease." (Tr. 173). Dr. Keaveney also concluded that Plaintiff should be evaluated by a psychiatrist or psychologist because he "clearly has some type of mental health problem." (Tr. 174).

On October 13, 2003, Plaintiff was examined by Leonard McCulloch, M.A. (Tr. 185-90). Plaintiff reported that he was unable to work because he suffered from "a lot of problems, physical problems with Hepatitis C and it gives me pain and cramping and body aches and I'm always tired." (Tr. 185). Plaintiff appeared "on the depressed side with a flat affect" and exhibited "questionable contact with reality." (Tr. 187-88). Plaintiff also reported that he struggles with "nervousness, anger, and feeling real paranoid." (Tr. 188). Plaintiff reported that "he hears voices and sees visions," but McCulloch observed no evidence of such. (Tr. 187-88). Plaintiff reported that he "doesn't really have any friends" and does not "get along with anybody." (Tr. 187). Plaintiff reported that he experiences "poor" sleep. (Tr. 187). McCulloch described Plaintiff's "stream of mental activity" as "non-focused and disinhibited verbally, circumstantial and tangential." (Tr. 187).

Plaintiff participated in the Wechsler Adult Intelligence Scale - Third Edition, the results of which revealed that he possessed a verbal IQ of 61, a performance IQ of 63, and a full-scale IQ of 58. (Tr. 189). McCulloch reported that Plaintiff "put forth effort on the tests and the results are taken as valid." (Tr. 187). McCulloch diagnosed Plaintiff with: (1) dementia with notable memory impairments that appear to be from the combined effects of several closed head injuries; (2) personality changes due to "cerebral insults" with features of depression, disinhibition, and psychotic features of auditory and visual hallucinations; and (3) opioid abuse and cocaine abuse. (Tr. 190). Plaintiff's GAF score was rated as 40[1] and his prognosis was deemed "poor." (Tr. 190).

On October 20, 2003, Dr. Cooke authored a memorandum concerning Plaintiff's condition. (Tr. 191). The doctor reported that Plaintiff "continues to have elevated liver enzymes" which "are getting worse," as well as evidence of "early cirrhosis." (Tr. 191). Dr. Cooke reported that Plaintiff experienced "chronic fatigue, abdominal pain and widespread arthralgias," as well as "headaches and upper back pain." (Tr. 191).

On October 28, 2003, as part of Plaintiff's request for benefits, an unidentified disability examiner requested an evaluation of Plaintiff's mental impairments. (Tr. 224). The examiner noted that Plaintiff had a "history of head injuries" and exhibited evidence of "organic cerebral pathology." (Tr. 224). The examiner concluded that Plaintiff's IQ scores "appear valid." (Tr. 224). The examiner further noted that Plaintiff suffered from "psychosis" and "mental issues [that] need to be addressed." (Tr. 224). The examiner concluded by noting that Plaintiff "doesn't

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (hereinafter DSM-IV). A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

seem capable of working" and suggested that Plaintiff satisfied either section 12.02 (Organic Mental Disorders) or section 12.05 (Mental Retardation) of the Listing of Impairments. (Tr. 224).

In response to this request, Dr. Sydney Joseph, on October 31, 2003, completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 230-43). Determining that Plaintiff suffered from inflexible and maladaptive personality traits, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.08 (Personality Disorders) of the Listing of Impairments. (Tr. 231-39). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 240). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Joseph also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 226-27). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 226-27).

On November 26, 2003, Plaintiff was examined by Dr. James Mayle, another of his long-term treating physicians. (Tr. 255). The doctor reported that he "would like to treat [Plaintiff's] chronic hepatitis C, but the lack of psychiatric evaluation and treatment is problematic." (Tr. 255). With respect to Plaintiff's application for disability benefits, Dr. Mayle observed that

while Plaintiff's "gastrointestinal issues" may not be disabling, his "psychological issues are disabling and will significantly interfere with his ability to obtain and keep a job." (Tr. 255).

On February 27, 2004, Dr. Mayle reiterated that he has "not treated [Plaintiff] for hepatitis C because of his psychological symptoms." (Tr. 250). The doctor noted, however, that because Plaintiff "recently has seen a psychiatrist and is regularly receiving counseling," he "may be able to consider treatment in the near future." (Tr. 250). Dr. Mayle further noted, however, that "[r]ecent laboratory studies suggest progression of disease which may make medical treatment of chronic hepatitis C problematic." (Tr. 250).

On May 26, 2004, Dr. Mayle reported that he was "concerned that [Plaintiff] is a poor candidate for interferon and ribavirin therapy for chronic hepatitis C" because "[w]e have significant potential for making his psychological disease worse." (Tr. 246).

At the administrative hearing, Plaintiff testified that he experienced back pain and that when he attempts to lift "things that are heavy" he "lose[s] control." (Tr. 346). Plaintiff reported that he still was not receiving treatment for his hepatitis C. (Tr. 347). Plaintiff reported that he was no longer able to receive psychological counseling because his insurance was "terminated." (Tr. 347). Plaintiff reported that prior to the termination of his health insurance he participated in counseling for 18 weeks. (Tr. 347-48).

With respect to his activities, Plaintiff reported that he prepares (but does not cook) "some" meals. (Tr. 349). He reported that he "sometimes" cleans dishes, vacuums, shops for groceries, and washes laundry. (Tr. 349). Plaintiff testified that he "sometimes" mows the lawn, which is "about 20 feet" in size. (Tr. 349). Plaintiff reported that he drives his mother to her medical appointments and gets her medications for her. (Tr. 350). As for hobbies, Plaintiff testified

8

that he attends church once a week and "sometimes" plays cards. (Tr. 349-50). Plaintiff also reported that he reads the bible and watches television. (Tr. 350). Plaintiff reported that he can lift "maybe approximately 15 pounds or 20, at the most." (Tr. 351). Plaintiff also testified that he can walk a "couple" of blocks and stand/sit for "about" one hour each. (Tr. 351).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. See 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. See 20 C.F.R. §§ 404.1545, 416.945.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) hepatitis, (2) affective disorder, and (3) degenerative disc disease of the neck. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-18). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform his past relevant work as a fast food worker. (Tr. 20). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Not Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) in an 8-hour workday, he can sit and stand/walk for six hours each; (3) he can never climb ladders, ropes, or scaffolds; (4) he can only occasionally stoop, crouch, crawl, kneel, balance, or climb ramps/stairs; (5) he can only perform simple, unskilled work requiring brief and superficial contact with the general public. (Tr. 18). A vocational expert testified that an individual with Plaintiff's RFC could perform Plaintiff's past relevant work, such limitations notwithstanding. (Tr. 354-55). Accordingly, the ALJ determined that Plaintiff was not disabled.

> a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Hines v. Barnhart*, 453 F.3d 559, 562-63 (4th Cir. 2006); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000); *Lanclos v. Apfel*, 2000 WL 1054893 at *3, n.3 (9th Cir., July 31, 2000); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

11

The ALJ acknowledged that Plaintiff suffers from Hepatitis C, but failed to sufficiently account for the impact of such in his RFC determination. The ALJ minimized the impact of Plaintiff's Hepatitis C on the ground that Plaintiff "has not received any treatment for his hepatitis, which suggests that it is not disabling." (Tr. 19). The ALJ further observed that "[i]n September 2003 Dr. Keaveney noted the claimant did not have any specific symptoms related to his liver disease." (Tr. 19). Neither of these statements withstand scrutiny.

Dr. Keaveney examined Plaintiff on a single occasion. As the ALJ correctly noted, while Dr. Keaveney recognized Plaintiff's history of Hepatitis C, the doctor observed no evidence of "chronic liver dysfunction." However, the ALJ ignored the remaining portion of Dr. Keaveney's comment. As Dr. Keaveney further stated, "over time without treatment clearly he is at risk for development of significant liver disease."

The ALJ further ignored subsequent medical evidence from Plaintiff's treating physicians indicating that Plaintiff was, in fact, developing significant liver disease. On October 20, 2003, Dr. Cooke reported that Plaintiff "continues to have elevated liver enzymes" which "are getting worse," as well as evidence of "early cirrhosis." The doctor further observed that Plaintiff was experiencing "chronic fatigue, abdominal pain and widespread arthralgias," as well as "headaches and upper back pain." On February 27, 2004, Dr. Mayle reported that "[r]ecent laboratory studies suggest progression of [Plaintiff's liver] disease which may make medical treatment of chronic hepatitis C problematic." The medical evidence, therefore, reveals that Plaintiff's Hepatitis C was far more advanced than the ALJ recognized. The ALJ's conclusion that Plaintiff's lack of treatment for Hepatitis C "suggests that it is not disabling" likewise reflects a significant misunderstanding of the medical evidence.

As detailed above, Plaintiff's care providers have consistently indicated that Plaintiff required treatment for his Hepatitis C, but that such treatment could not commence until Plaintiff received "psychiatric clearance."  Obtaining the approval of Plaintiff's psychiatric care providers before treating Plaintiff's Hepatitis C was necessary because otherwise Plaintiff could experience an exacerbation of his psychological impairments.  However, as Plaintiff testified he has been unable to receive the necessary psychiatric treatment because his health insurance was cancelled.

Plaintiff's report of back pain and limited endurance are consistent with his ever progressing (yet untreated) Hepatitis C.  The ALJ's RFC determination fails to sufficiently account for such.  The ALJ's RFC further suffers from the fact that the ALJ failed to sufficiently account for Plaintiff's profoundly limited intellectual functioning.

As noted above, testing revealed that Plaintiff possesses a verbal IQ of 61, a performance IQ of 63, and a full-scale IQ of 58.  The results of this examination were deemed valid by both the individual who administered the test, as well as an independent examiner employed by the Commissioner.  Claimants suffering from this level of intellectual functioning are often considered mentally retarded and, therefore, disabled and entitled to benefits.  *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2006).[3]  Despite evidence that Plaintiff suffers from severe intellectual limitations (and perhaps even mental retardation), the ALJ failed to find that such even constituted a severe impairment.  More importantly, the ALJ's RFC fails to account for Plaintiff's severe intellectual limitations.  While the ALJ determined that Plaintiff can only perform simple,

---

[3] The Court notes that despite evidence of Plaintiff's severe intellectual limitations, the ALJ declined to specifically address whether Plaintiff satisfied the requirements of this particular listing.

unskilled work requiring brief and superficial contact with the general public, the Court finds that such fails to sufficiently account for Plaintiff's severe intellectual limitations.

In sum, the ALJ's RFC determination is not supported by substantial evidence. As noted above, the vocational expert testified that Plaintiff, if limited to the extent recognized by the ALJ, would still be able to perform his past relevant work. It was on the basis of this testimony that the ALJ concluded that Plaintiff was not disabled. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that Plaintiff can perform his past relevant work is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b.  Evidence of Plaintiff's Disability is Compelling

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling).

In the Court's estimation, the medical evidence detailed above constitutes compelling evidence that Plaintiff is disabled. Simply put, Plaintiff is impaired both physically and mentally to

an extent that precludes him from performing substantial gainful activity on a regular and continuing basis. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for payment of benefits.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for payment of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                            Respectfully submitted,

Date: August 7, 2008                          /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge